The final case this morning is Progress for Bakersfield Veterans, Precious to the United States, and SASD Development Group, 2022-1775. Good morning. How do you pronounce your name, Counsel? Jokum. Jokum. Please proceed. Good morning, Your Honors. I may please the Court, Elizabeth Jokum, for Progress for Bakersfield Veterans, or PBV. Before the claims court, PBV argued that the VA had waived the material solicitation requirement that the selected offeror deliver the anticipated veterans clinic within 24 months of lease award. The claims court dismissed the protest, ground on the basis that under Boo and Goldfleet, any objection to the 24-month delivery requirement had to be filed before proposal submission. But, Your Honors, PBV did not and does not object to any solicitation requirement. Rather, it enforced. The dismissal stemmed from PBV's statement that it knew, ostensibly prior to submission of its proposal, that no offeror could deliver a newly constructed clinic on raw land within 24 months. That fact did not indicate a solicitation flaw. PBV knew that it could submit proposals that were compliant with the delivery requirement and that other the delivery requirement as a competitive advantage over at least one likely competitor, SASD. That advantage was eliminated when the VA eliminated the requirement to deliver the clinic within 24 months, and PBV challenged the agency's waiver of that requirement. Well, when you say eliminated the 24-month requirement, what was the form in which they struck from the solicitation? Yes, Your Honor. So, the lease that was executed contained a paragraph that indicated when construction would be complete, but that paragraph referred back to another paragraph that did not actually contain a delivery date. So, the executed lease essentially said that the lease would begin when construction was completed and which was incorporated into the contract still required 24-month delivery, correct? Your Honor, the solicitation required offers... It was incorporated into the agreement. The solicitation was incorporated... And the solicitation was incorporated with the 24-month period intact, correct? Yes, except for that the solicitation required offers to propose either a 20- or 24-month delivery requirement and then the final amendment to the solicitation, which deleted the 20-month option, leaving the 24-month option set that the contracting officer could execute a lease with a 24-month delivery requirement. But then ultimately she did not. She executed a lease with no delivery requirement. So, you're saying the delivery requirement, which was incorporated in the lease per the solicitation, was not in fact part of the lease requirement when the lease was entered? That's right, Your Honor. The solicitation required offers to submit proposals based on either a 20- or 24-month requirement. And the 20-month was taken off the table? Yes. Leaving the 24. Leaving the contracting officer the option, the language says could execute a lease with a 24-month delivery requirement, but ultimately she did not. That's not what the lease says. So, Your Honor, PBB could not have known... Why was PBB eliminated from the bid process? It was eliminated from the competitive range. From the competitive range, Your Honor, based on its technical evaluation. And you're not challenging that part? We did challenge that, but we haven't appealed the claims court's decisions on those issues. Blue and Gold Fleet requires facts and knowledge prior to proposal submission in order to raise a pre-proposal protest. PBB did not and could not have known prior to submission of its proposal that the agency would engage in communications with SASD indicating an intent to amend... But you knew at that point in time that you were not going to be able to perform? No, Your Honor. We absolutely believe we could have and could perform. We believe that SASD was incapable of performing. But you were struck from the competitive range for reasons other than the 24 months, right? Correct, but we weren't deemed unacceptable. The agency just went through the process of down selecting the number of offers that it was considering and did a single offer competitive range. So we were not found unacceptable. We were At the claims court, PBB argued that the agency was not permitted to waive this delivery requirement, but rather was required to cancel the solicitation and re-solicit based on the actual flexibility for delivery requirement timing. The government argued that instead PBB should have filed this protest prior to proposal submission. But, Your Honors, I genuinely struggle to imagine what that protest would have said. I suppose PBB could have said, we can meet the requirements, but no one else can. Or we can meet the requirements, but only offers proposing a renovation or proposing to do new construction on developed land can meet the requirements. There would have been no standing there. PBB didn't have an economic interest in raising that argument. There would have been no competitive injury. Blue and Gold Fleet requires a potential offer to challenge a solicitation requirement that it can meet, but that limits the competition. That's a competitive advantage, not a flaw in the solicitation. Since PBB asserted no solicitation flaw, Blue and Gold Fleet is inapplicable and the claims court committed a reversible error in dismissing the protest grant. I understood that PBV knew that it was not able to complete the construction in 24 months. No, Your Honors. Not only it, but everybody else. Is that not right? No, Your Honor. The statement that PBV made that the government took issue with was that no offerer, specifically SESD, but no offerer could complete new construction on raw land within 24 months. PBV proposed two renovations and one new construction on developed land. So at no point in time did PBV believe it could not meet the delivery requirement. It believed that there were other potential offers, including SESD, that could not meet it, but it could. Anything further, Counsel? No, nothing further. We will save you time for rebuttal if you need it. Mr. Roberson? May it please the Court. This Court should affirm the trial court's determination that PBV's bid protest claim concerning the 24-month delivery term was waived. The trial court correctly found that the waiver rule in Blue and Gold Fleet bars PBV's claims. Moreover, the factual amendment to the lease's 24-month delivery term and no failure by VA to enforce the lease's delivery requirements. First, conceptually, PBV's actions here fall squarely under the paradigm of Blue and Gold Fleet, as well as this Court's decision in Comet. This Court's decisions in those cases recognize the broad application of the waiver rule. If a protester had the opportunity to apply and failed to do so, the Blue and Gold waiver rule applies. That's Comet 700F3 at 1382. Here, in PBV's own words, it knew that delivering a newly constructed clinic within 24 months from the lease award was not possible for anyone, Appendix 86. There's no dispute that PBV believed this. Indeed, it argued that no one, not SESD, nor any other offer could deliver a newly constructed clinic within 24 months. Your opposing counsel is saying, well, that's not quite right, because PBV could do it on developed equipment, as opposed to undeveloped equipment. Right. That's their argument. So their argument is trying to split the solicitation and say, there's one error here that's clear, and everybody knew it was an error, which was this defective term of a 24-month delivery on raw land. We are lucky. We're the only ones that can offer on a rehabilitation component of the solicitation. So they're trying to split the solicitation in two and say, if a solicitation is half bad, it doesn't matter as long as our half is okay. And we put in for two. That's the important thing to remember. They didn't just sit back and put in their bid for rehabilitation. They put in a bid for development on raw land specifically on raw land as opposed to developed land, which is what your opposing counsel is arguing today. I believe what you meant was as opposed to rehabilitation on developed land. So the circumstance is that PBV currently has the VA clinic. And what they propose in their rehabilitation is, we can change things around. We can move things. We can rehabilitate it. And we can do that within 24 months. Sure, I understand that. But what I'm trying to get at is the distinction between new construction on raw land versus new construction on whatever it means, you know, developed land. That's the distinction that I understood her to be arguing today. I'm not sure that that distinction is what is in the record, Your Honor. I haven't developed land. I know that there's a site identified. And I believe that that's not in the record, the identification. And then it's under seal, the specific location. But the argument that there's a development on raw land is one that they say no one else could meet. So I guess the issue is, you could say, they say that anyone who puts in a 24 month on raw land can't meet it. And then they say, we put one in, assuming the argument. I don't know if this is their argument, Your Honor. It certainly wasn't articulated clearly to me at the trial court level that they had another piece of land that's developed. Whatever that means. You have to raise things. I'm not sure. There's concrete pads out there. I'm not sure. What we know is, what they argued was that on raw land, no one could meet this defective, no one could do it in 24 months. And they themselves put in a schedule to develop a new track, a newly constructed clinic in 24 months. Now, okay, what about the argument that the 24 month period was eliminated in one way or another from the solicitation and ultimately from the lease? Factually incorrect, Your Honor. Okay. What are the facts as you see them? Okay. So there's a whole slew of facts. I'll go through them. It'll take me a little bit. But first, I think the most important thing is to understand that the lease allowed for delays to the schedule. So that's at the lease 3.2, 3.2, 3.2, 3.2. That's Appendix 75 and 103. And you say those delays were within the 24. No, no. So what you do is, the way this worked was, offers put in a bid showing a hypothetical delivery date based on a hypothetical award date, right? 24 months. SASD puts in a schedule saying they can do it. PBB puts in a schedule that says they can do it. Then when there's award, then the lease starts, right? And then the terms, all the lease terms come into play, which include the capability to have the schedule extended due to delays. And that, I'm taking, is fairly standard. You have site conditions, you have weather, you have active war. Your Honor, if government contracts were able to be overturned based on delay, I think we'd have an issue. Yes, of course, in the construction case, there's going to be capability for delay. So that's the first thing. A 24-month marker, subject to these internal delays that are provided for, would remain in the contract? Is that your position? You have the 24 months, and then whatever else happens in terms of delays that are allowed pursuant to the contract, to the lease. So the lease provides, it's common sense. In a construction court, of course, that capability's there. So that's the first thing. Secondly, they talk about, well, there wasn't a date certain for the delivery under the lease. But again, at the point of the offers, they merely require showing a hypothetical 24-month delivery period. Then at the point of the lease execution, the beginning date of the lease contract's known, from which to calculate the 24 months later. But the specific date for delivery was not required to be set forth until 45 days after the lease execution. So that's at 3.21.3 Appendix 73 and 101. So what that meant was, you got the contract. Then within 45 days, you go back to the VA and give the specific dates. Well, in that period of time, of course, things could already start to be enlarged. And in this case, we know that they were, because there was a lawsuit that PBB brought against the city of Bakersfield to try to stop the SECA program, which was basically a fast-tracking environmental compliance. So PBB had that lawsuit filed just days before the award to SASD. So that's there. Secondly, they refer to the liquidation clause. They say there's no liquidation clause. They're trying to backtrack that in. The liquidation clause is in the contract. There's nothing that shows that their liquidation clause was taken out. And generally, there's no change to the contract. In fact, they made the argument of a de facto amendment to the delivery clause before the GAO, and GAO rejected it. They said, look, you haven't pointed to any evidence that there was any amendment to the contract, so we're rejecting that. That's PBB just admitted, and they did in their papers, that Amendment 4 left the 24-month delivery term in place. That's Appendix 44. They argued there was a change in the execution of the, prior to the execution of the lease, by citing to an email between SASD, Mr. Doctor, and the notion that there was an amendment to the contract. So that email discusses moving the design aspect of the project forward to accommodate the environmental approval process. So that's within the lease, and of course, within the lease includes the term allowing for an enlargement of the delivery date based on delays. And then they had a second part of that email. There was this notion of, there was a discussion of payment in the event the withdrawal of the 24-month delivery term. That's simply a discussion that if the contract doesn't go forward, meaning it's terminated, that VA will pay SASD for their efforts to date. Nothing unusual about that. So the other prong of PBB's argument is that SASD couldn't meet the 24-month delivery requirement. And why? Because they said it was mathematically impossible. And they say the CEQA process takes too long. It takes one year for the agency to review. That's the California regulations that allow, actually provide that an agency has to respond within one year. Well, that doesn't mean that because the agency has one year under the law to respond to a CEQA application, that it takes one year for a CEQA application to Secondly, there wasn't a CEQA requirement in the solicitation of the lease. So that component of the project wasn't required under the lease itself. And again, there's nothing unusual about it. But wouldn't it have been required by California law? What's that? Wouldn't it have been required by California law? Certainly. I mean, to develop on land. But in other words, there's an understanding that this is a process. We're not requiring you as an offeror to drill down into the detail of a CEQA versus an environmental report aspect of environmental compliance. The other thing is, they say that the 24-month schedule that SASC even provided, there's no way they could possibly have met that period. SASC's schedule did show a delivery within 24 months. And part of the problem that PBV has is that there's an overlap where construction starts and when there's the design process and permitting process. There's actually some construction components that can start prior to the permitting. For instance, grubbing, things of that nature. So there was, on SASC's schedule, the capability to meet the 24-month project, even within a year permitting process. Or roughly a year permitting, I think it was 11 months. But then, if you look at SASC's schedule, it didn't take 24 months for the literal construction, 16 months. So there was this period of time where there wasn't going to be construction on day one. And if you look at PBV's schedule, you'll see that I think they put in about a year for the physical construction. So with the presentation of SASC's schedule to the VA, VA reasonably understood that SASC was going to be able to meet the 24-month term. And again, the delays that are the result of PBV's lawsuit against the city of Bakersfield regarding the issue of the mitigated negative declaration. So it's sort of a self-fulfilling stance in terms of there being a delay. I want to talk briefly about this notion of what PBV knew and when it knew it. It admits that it knew the impossibility in May of 2020 that there could not be a 24-month delivery period. It didn't protest the term until May of 2021. And that's when the GAO. That's only after the April 26, 21 award to SASD. So you really have to look at what PBV did here. It submitted one offer for a newly constructed clinic and two offers for the rehabilitation of its existing clinic. That way, if PBV won the award for the new construction offer, it would not have to protest the 24-month delivery term. But if it did not win the award for the newly constructed clinic, it could argue that the term was defective and as such could not be enforced. And in that instance, PBV argues that only its two offers for rehabilitation of the pre-existing clinic could meet the 24-month delivery term. That's exactly the heads-I-win, tails-you-lose paradigm that the waiver rule as developed by this court was meant to preclude. Thank you, Mr. Robinson. Ms. Burrows has a minute or so. Good afternoon. May it please the court. It's not quite afternoon yet. Catherine Burrows on behalf of Intervenor SASD Development Group. I know I only have a minute, so I just want to make a couple quick points. There was a statement earlier that it was the contracting officers' reserve the right to award in the contract whether or not they were going to do the 20-month or 24-month or what the lease term was going to be, so on and so forth. But that's really not an accurate reading of the solicitation. Amendment 4 removed the opportunity, all opportunities for a 20-month construction period and also for a 15-month lease term. So the only thing that was left is the 24-month delivery within 24 months of the 20-year lease. And this is Section 1 term is 1.4 of the solicitation. It's at Appendix 40. And it says the contracting officer reserves the right to award on any available alternate listed above. So there was no I can just do whatever I want and if I want to make it 36 months, I can make it 36 months. The only option here was the 24 months. And then just to make one other comment about the undeveloped versus the developed land, in their initial brief, PPB only talks about new construction. That's on page 8, their summary of the argument. And then in their reply brief on page 2, they sneak in here some reference to undeveloped land. But there's no site to anything in the record that discusses newly developed land. The only thing in the record talks about newly constructed. And that's on Appendix page 54. It talks about a newly constructed building, which was one of the three offers that PPB made. There was no discussion about undeveloped land. And there's nothing in the record to that point. Thank you, Counsel. Ms. Jochum has some little time. Thank you, Your Honors. I hesitate to rebut too much a lot of the facts we've discussed because they are well post-proposal submission. And this is a case about waiver. Whether or not the claims court on remand with access to the full administrative record would be the proper court to determine whether or not a waiver of the 24-month delivery requirement actually occurred. So prior to May 2020, did PBD know that it and no one else would be able to meet the terms of the solicitation? No, absolutely not, Your Honor. And it's not even accurate. Mr. Roberson said that only PBV could offer a renovation. That is not correct. PBV is the only offer that is currently the lessor of the existing Veterans Clinic, but the SFO allowed for renovation of any existing building. Any offer offering a renovation could have met the 24-month delivery requirement. And again, not to veer too much into this, but also any offer that was not offering construction on raw land, requiring zoning, permitting, and navigation of these very complex environmental issues. So when you followed your May 2020 protest with GAO, it seems to me that it's clear that PBV told the GAO that it knows that it's not possible for anyone to deliver a brand new construction on raw land was the statement that was made to GAO. And that excluded, that at that time was our argument that SASD could not meet the requirement and a number of other prospective offerers, none of whom submitted proposals. But that did not cover the entire universe of potential offerers. Again, there are other potential bidders for renovation. It covered SASD. So as we were arguing... But again, Your Honor, that's not a solicitation flaw. PBV could meet the requirement. Just because another offer couldn't doesn't mean there was a flaw in the solicitation. From It's not a flaw. At that time, we were arguing not even waiver of the 24-month delivery requirement because we didn't have the facts to make those arguments. We were simply arguing that SASD could not meet this requirement, and therefore, the government must have unreasonably evaluated SASD. And so we had to present our facts. Why do we believe that SASD couldn't meet the requirement? And we believe that based on our knowledge of construction in Kern County and Bakersfield, that no offer, including SASD, could deliver new construction on raw land within 24 months. That's correct, Your Honor. But again, that's not a solicitation flaw. That's certainly a solicitation requirement that limits competition. But that's not a flaw. That's not something that we would or could object to. Your Honor, Your Honor, there's a couple of facts about the language that was used here. I think it's interesting that we're already talking about hypothetical delivery dates, construction delays. I mean, there was, again, a very hefty liquidated damages provision in this lease, $8,500 a day for failure to meet the delivery requirements. There is a pre-performance delay, which is a matter of contract administration, and pre-award waiver of a solicitation requirement. And we argued and demonstrated, based on information in the administrative record, that there was pre-lease execution waiver. Whether or not delays were possible or permissible or what would happen with delays in construction during performance, again, we did not challenge that. That is a matter of contract administration. We argued that the record in front of the claims court in the administrative record at time of lease execution demonstrated the waiver. This issue of raw land versus developed land or whatever the term is, could you raise this in your briefs? The only reference having anything to do with this that I could find was that on page two of the reply brief, there's reference to newly built clinic on previously undeveloped land. What else did you say about this distinction between what PBV could do versus what SASB could do with respect to developed or undeveloped land? I didn't see that anywhere in the briefs. Yes, Your Honor. We really didn't get into that, neither, none of the parties did, because that's an issue on the merits, for the merits. The government did cite in their brief... I'm not sure it doesn't bear significantly on the question of whether this was a flaw in the solicitation. You're now suggesting that, well, this 24 months wasn't a problem for us. Well, it wasn't a problem for us even if it was developed, undeveloped, whatever, because No, no, no. With respect to the 24 months, I take it you're saying that would be equally a problem for you as it would be for SASB setting aside the developed land and raw land... Potentially for one of our three proposals. I understand that, but I'm focusing on the one proposal of the 24 months, so let's focus on that. With respect to that proposal, are you saying that you could have done that? Yes, Your Honor. And does that invoke the developed land versus raw land distinction? Yes, Your Honor, it does. Where is it in your brief? So the first time that we brought up this issue in the May GAO protest, we stated that we knew SASB could not meet this requirement because it was new construction on raw land. Our new construction proposal was not for raw land. It's developed land, doesn't require permitting, doesn't require zoning, doesn't require the environmental issues that we alleged that the claims court was holding up and would hold up SASB. Your Honor, that is in your briefs. Your Honor, truly, I believe all of this is on the merits, so I apologize if I didn't address it, but to me the question was, what did we know prior to proposal submission? And what we knew at that time was that the 24-month delivery requirement would eliminate some potential competitors, but not us. But you didn't tell us that in your briefs. Your Honor, respectfully, I disagree. Well, where is it in your briefs? Well, Your Honor, we explained that we were not saying there was a flaw in the solicitation. We were arguing that SASB and potentially others could not meet this requirement. Okay. Well, I read the record to show that PVD told the GAO that it, quote, it knows that it is not possible for anyone to deliver a brand-new clinic 24 months from now. That would include you. On raw land, Your Honor. I mean, that quotation is in the government's brief, I know, and I mentioned it in our reply brief. I apologize for not having emphasized it. From our perspective, there is definitely a difference between the new construction that we offered and the land that's clear from the record before the claims court because it's the why. Why couldn't SASB deliver? Because of the environmental issues, because of the zoning issues, because of the permitting issues, none of which are relevant to us. Also, it's highly relevant that we propose two renovation options. Even if, theoretically, our new construction proposal were excluded for waiver, we had two other proposals that were unrelated to this argument, totally unrelated to the inability to do new construction in 24 months. Again, this is not a solicitation flaw. This is a waiver of a requirement right prior to the time of lease execution. Counsel, I think your time has expired. Thank you both. The case is admitted. Thank you, Your Honor.